**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MICHIGAN**

***(With Ancillary Federal Jurisdiction, Petitions for Emergency Writs, and Ultimate Review Before the Supreme Court of the United States)***

Case: 5:26–cv–13568
Assigned To : Levy, Judith E.
Referral Judge: Ivy, Curtis, Jr
Assign. Date : 9/21/2026
Description: CMP Colbert v. Bravo Media LLC et al (jo)

**EUROPE R. COLBERT,**

Plaintiff,

v.

**BRAVO MEDIA, LLC;**

**ANDY COHEN;**

**THE REAL HOUSEWIVES CAST MEMBERS & PRODUCTION PARTICIPANTS (ALL SEASONS & FRANCHISES, INCLUDING POTOMAC, BEVERLY HILLS, ATLANTA, NEW YORK CITY, AND SPECIFIC CAST MEMBERS INCLUDING GIZELLE BYRANT, ASHLEY DARBY, ROBYN DIXON, KAREN HUGER, CHARRISSE JACKSON-JORDAN, MONIQUE SAMUELS, CANDIACE DILLARD BASSETT, WENDY OSEFO, MIA THORNTON, PHAEDRA PARKS, KYLE RICHARDS, LISA VANDERPUMP, TAYLOR ARMSTRONG, CAMILLE GRAMMER, KIM RICHARDS, BRANDI GLANVILLE, YOLANDA HADID, LISA RINNA, EILEEN DAVIDSON, ERIKA JAYNE, DORIT KEMSLEY, DENISE RICHARDS,**

**GARCELLE BEAUVAIS, SUTTON STRACKE, CRYSTAL KUNG MINKOFF, KATHY HILTON, NENE LEAKES, KIM ZOLCIAK-BIERMANN, SHEREE WHITFIELD, LISA WU, KANDI BURRUSS, CYNTHIA BAILEY, KENYA MOORE, PORSHA WILLIAMS, CLAUDIA JORDAN, DEMETRIA MCKINNEY, EVA MARCILLE, DREW SIDORA, BETHENNY FRANKEL, RAMONA SINGER, LUANN DE LESSEPS, SONJA MORGAN, JILL ZARIN, ALEX MCCORD, KELLY KILLOREN BENSIMON, AVIVA DRESCHER, CAROLE RADZIWILL, DORINDA MEDLEY, TINSLEY MORTIMER, LEAH MCSWEENEY, AND EBONI K. WILLIAMS);**

**CURTIS "50 CENT" JACKSON / G-UNIT STUDIOS;**

**EMMITT PERRY JR. p/k/a TYLER PERRY / TYLER PERRY STUDIOS;**

**ERIC SPOONEY;**

**BRANDON WRIGHT;**

**JAMIL FELLS;**

**ARKEISHA ANTOINETTE KNIGHT;**

**COURTNEY A. KEMP;**

**SASCHA PENN;**

**GARY LENNON;**

**RANDY HUGGINS;**

**POWER & BMF WRITERS & PRODUCERS;**

Defendants.

**Case No.:** [To be assigned by Clerk]

**Judge:** [To be assigned]

**COMPLAINT**

Plaintiff, **EUROPE R. COLBERT**, alleges as follows:

**1. Jurisdiction and Venue**

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, and under 28 U.S.C. § 1331 given the federal statutory violations alleged herein, including violations of the Electronic Communications Privacy Act (ECPA), federal civil rights protections, and multi-state broadcast torts.
2. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, and Plaintiff resides here. Furthermore, pursuant to federal question jurisdiction and the gravity of constitutional privacy infractions, this action contemplates ultimate appellate review and emergency extraordinary writs before the **Supreme Court of the United States** should federal lower courts or systemic multi-state broadcast infringements require supreme judicial intervention.

3. **Tolling, Discovery Rule, and Continuing Tort Doctrine:** To the extent that certain foundational acts commenced outside standard statutory periods, all applicable statutes of limitations are fully tolled and legally suspended under the *Discovery Rule* and the *Continuing Tort Doctrine*. Plaintiff did not discover the full scope, commercial exploitation, multi-character script allocation (*Beauty in Black*), and coordinated operational cover-ups until recent ongoing broadcasts and retaliatory actions occurred. Furthermore, Defendants' continuous and uninterrupted re-broadcasting, ongoing digital streaming availability, active merchandising, repeated social media platform censorship, and fresh defamatory publications (including Andy Cohen's recent false public statements regarding job terminations and the active integration of Arkeisha Antoinette Knight) constitute an ongoing, unbroken, and continuous chain of tortious conduct that continually re-triggers claims up to the present date.
4. **Private Figure Status & Actual Malice:** Plaintiff is, and at all relevant times has been, a private individual who never voluntarily thrust herself into the public eye, never sought media fame, and never assumed any public role. Defendants artificially manufactured and thrust a public narrative upon Plaintiff against her express will. Alternatively, even if evaluated under any heightened public figure standard, Defendants acted with severe **actual malice**—having actual subjective knowledge that their broadcasted narratives, secret home surveillance clips, health rumors, false job termination claims, and simulated death scenarios were entirely false, or acting with reckless disregard for the truth while ignoring direct Cease and Desist notices and direct warnings from Plaintiff.

## 2. Parties

- **Plaintiff:** EUROPE R. COLBERT, 12794 Couwlier Ave, Warren, MI 48089.
- **Defendants:**
    - **BRAVO MEDIA, LLC** – television network/production company.
    - **ANDY COHEN** – Host and executive producer of Bravo's nightly, interactive late-night talk show *Watch What Happens Live with Andy Cohen* (2009–Present); host of all reunion specials for the *Real Housewives* franchise; host of the primetime revival game show *Love Connection* (2017–2018); and host/executive producer of *For Real: The Story of Reality TV* (2021). Associated with production methodologies involving **The Setup** (producers arranging group trips, dinner parties, and social events to prompt unscripted, organic interactions and reactions) and **Editing** (utilizing post-production editing, talking-head interviews, and selective sequencing to build narrative arcs), noting that while the drama and lifestyle are real, the situations are heavily curated and produced.
    - **THE REAL HOUSEWIVES CAST MEMBERS & PRODUCTION PARTICIPANTS** – All featured cast members, network participants, and associated production figures across all franchises of the *Real Housewives* series—specifically including *The Real Housewives of Potomac* (RHOP), *The Real Housewives of Beverly Hills* (RHOBH), *The Real Housewives of Atlanta* (RHOA), and *The Real Housewives of New York City* (RHONY), and all notable cast members including Gizelle Bryant, Ashley Darby, Robyn Dixon, Karen Huger, Charrisse Jackson-Jordan, Monique Samuels, Candiace Dillard

Bassett, Wendy Osefo, Mia Thornton, Phaedra Parks, Kyle Richards, Lisa Vanderpump, Taylor Armstrong, Camille Grammer, Kim Richards, Brandi Glanville, Yolanda Hadid, Lisa Rinna, Eileen Davidson, Erika Jayne, Dorit Kemsley, Denise Richards, Garcelle Beauvais, Sutton Stracke, Crystal Kung Minkoff, Kathy Hilton, NeNe Leakes, Kim Zolciak-Biermann, Shereé Whitfield, Lisa Wu, Kandi Burruss, Cynthia Bailey, Kenya Moore, Porsha Williams, Claudia Jordan, Demetria McKinney, Eva Marcille, Drew Sidora, Bethenny Frankel, Ramona Singer, Luann de Lesseps, Sonja Morgan, Jill Zarin, Alex McCord, Kelly Killoren Bensimon, Aviva Drescher, Carole Radziwill, Dorinda Medley, Tinsley Mortimer, Leah McSweeney, and Eboni K. Williams—who actively participated in, deployed, repeated, or amplified the unauthorized disclosures, secret surveillance, and harassment of Plaintiff.

- **CURTIS "50 CENT" JACKSON / G-UNIT STUDIOS** – individual and media company. Defendant Curtis Jackson himself heavily shaped the narrative direction, tone, and character development as an executive producer and director across these shows, and has occasionally received direct story or production-side credits alongside his main production team.
- **EMMITT PERRY JR. p/k/a TYLER PERRY / TYLER PERRY STUDIOS** – individual and media company. *(Associated with works including Diary of a Mad Black Woman (2005), Madea's Family Reunion (2006), Why Did I Get Married? (2007), Madea Goes to Jail (2009), Why Did I Get Married Too? (2010), Good Deeds (2012), and Beauty in Black).*

- **ERIC SPOONEY** – individual defendant who sold false narratives and stories regarding Plaintiff's personal relationships to media producers, and who is being sued in his own separate legal action.
- **BRANDON WRIGHT** – individual defendant and former lover of Plaintiff from 2007, who is independently being sued in his own separate legal action for his involvement in unauthorized disclosures and related conduct.
- **JAMIL FELLS** – individual defendant and former lover/acquaintance whose personal dynamic with Plaintiff was appropriated and displayed without consent, and who is independently being sued in his own separate legal action.
- **ARKEISHA ANTOINETTE KNIGHT** – individual defendant who was integrated into the public narrative rollout and operational framework by network figures to cover tracks and deflect liability, and who is independently being sued in her own separate legal action.
- **ALL OTHER FORMER LOVERS AND ASSOCIATED INDIVIDUALS** – All other former romantic partners and associated figures whose names or personal histories were utilized or commercialized without consent, each of whom is being independently sued in their own respective separate legal actions.
- **COURTNEY A. KEMP** – Creator, showrunner, and lead writer of the original *Power* series; co-creator of the broader *Power* universe.

- **SASCHA PENN** – Creator and showrunner of *Power Book III: Raising Kanan*, and key writer/producer across the franchise.
- **GARY LENNON** – Showrunner and writer for *Power Book IV: Force* (and veteran writer/executive producer from the original *Power*).
- **RANDY HUGGINS** – Creator, showrunner, and principal writer of *BMF*, who brought the Detroit-based story to life.
- **POWER & BMF WRITERS & PRODUCERS** – Additional writing and production staff across the universes, including Monica Mitchell, Gabrielle Stanton, Jeff Stetson, Damion Han, Eric Haywood, Heather Zuhlke, Anthony Sparks, Crystal Ferreiro, and Steve Kornacki.

**3. General Allegations**

1. Beginning in 2005 and continuing to the present, Defendants recorded, distributed, or otherwise shared private content and information of Plaintiff without her consent, which remains publicly available.
2. Defendants extracted private information regarding Plaintiff's life, former relationships, family members, and former coworkers, and incorporated these private details into their movies and television shows.
3. Furthermore, Defendants Emmitt Perry Jr. (p/k/a Tyler Perry), Curtis "50 Cent" Jackson, Andy Cohen, the *Real Housewives* cast members and production participants across all featured franchises (including Potomac, Beverly Hills, Atlanta, New York City, and all listed cast members), and participating reality and scripted network figures escalated their campaign by depicting scenarios where

Plaintiff's character or persona was killed off within their television shows and media, deliberately leading the public and viewers to believe that Plaintiff was actually dead in real life. Defendant Curtis Jackson, acting as executive producer and director, personally directed and shaped the narrative direction and tone of these invasive storylines.

4. Defendant Emmitt Perry Jr. was fully aware that former boyfriends of Plaintiff—including Defendant Eric Spooney—were lying about marrying Plaintiff, yet deliberately chose to continue producing movies and media based on these falsehoods. Specifically, Perry incorporated details from Plaintiff's final relationship into productions such as *Why Did I Get Married Too?* (2010), while intentionally misrepresenting and downplaying the actual domestic violence that occurred in the relationship in order to shield, protect, and save Eric Spooney, the man who sold him the false narrative and story.

5. Defendant Perry's systematic exploitation of Plaintiff's private life spans across his cinematic and television catalog, including:

   - ***Diary of a Mad Black Woman* (2005):** Displaying and exploiting Plaintiff's private relationship with former boyfriend Terrance L. Shorter without consent (with all former lovers, including Shorter, being independently sued in their own separate legal actions).
   - ***Madea's Family Reunion* (2006):** Displaying private dynamics of Plaintiff's relationship with her family, alongside the deeply sensitive and traumatic private narrative of Plaintiff being sexually assaulted as a child.

- ***Why Did I Get Married?* (2007):** Appropriating intimate personal history and relationship struggles.
- ***Madea Goes to Jail* (2009):** Specifically depicting Plaintiff going to jail under the character name or reference of "Candy"—which was the deeply personal nickname given to Plaintiff by her grandfather before his passing in 2008.
- ***Why Did I Get Married Too?* (2010):** Re-appropriating details of Plaintiff's final relationship and minimizing domestic abuse to protect Eric Spooney.
- ***Good Deeds* (2012):** Displaying and commercializing details of Plaintiff's relationship with **Jamil Fells** (who is independently being sued in his own separate legal case) without authorization.
- ***Beauty in Black* (All Seasons):** Systematically fracturing, splitting, and re-allocating Plaintiff's identity across **multiple simultaneous roles, character arcs, and subplots** throughout every season of the series. Defendant Perry utilized Plaintiff's life history, physical attributes, trauma points, professional experiences, and personal conflicts to populate multiple distinct characters simultaneously within the narrative universe, effectively multiplying the unauthorized commercial exploitation of Plaintiff's persona across competing roles in the same production.

6. The *Real Housewives* cast members and network participants have all at one point in time deployed, weaponized, and broadcasted deeply intimate and distressing events from Plaintiff's personal life without consent. This unauthorized exposure includes private details regarding Plaintiff's childbirth (such as private

circumstances regarding not telling her mother when her firstborn was due), severe allegations and trauma concerning the rape of the Plaintiff, private sexual activity within her home while she was being secretly recorded without her permission—including specific displays and distribution by cast member **Kenya Moore**, who publicized private footage of Plaintiff engaging in sexual acts within her own home on the internet—the public display by cast member **Kim Zolciak-Biermann** of the specific wig Plaintiff was wearing when she met her former lover **Brandon Wright** in 2007 (with Brandon Wright and all other former lovers independently facing separate individual legal actions)—and severe medical emergencies such as an ectopic pregnancy where Plaintiff was secretly recorded experiencing extreme physical distress, vomiting, and diarrhea.

7. In furtherance of their harassment and defamation, Defendants Emmitt Perry Jr. and Curtis "50 Cent" Jackson also fabricated and broadcasted malicious rumors within their shows asserting that Plaintiff contracted a sexually transmitted disease (STD), as well as falsely depicting Plaintiff as engaging in the use and sale of illegal drugs—substances and activities in which Plaintiff has never participated.

8. Defendants' invasive tracking and appropriation extended to real-life personal travel; after Plaintiff was followed during a trip to Mexico, Defendants incorporated these exact private movements into their programming on STARZ (including *BMF*), specifically depicting characters such as "Big Meech" following and sleeping on the beach—matching the precise private actions and location of Plaintiff.

9. In addition to media broadcasts, Defendants and associated stalkers incorporated threatening rituals and voodoo methodologies, while explicitly stating and broadcasting threats that Plaintiff would die before ever reaching court or seeing justice.
10. Plaintiff explicitly asked all parties to stop their tortious conduct because Plaintiff wanted to focus her time and energy on pursuing legal action against her stalkers. However, rather than ceasing, the harassment and retaliation only became drastically worse from the Defendants—particularly from Defendant Emmitt Perry Jr., who intensified the campaign.
11. Plaintiff directly and repeatedly contacted Andy Cohen, network executives, and production entities, explicitly demanding that they stop what they were doing because their continuous broadcasting of her private life, medical trauma, and harassment was causing severe and escalating harm. Despite receiving these direct communications and formal Cease and Desist notices, Defendants refused to comply and continued their tortious conduct.
12. Furthermore, in an escalation of targeted harassment and severe psychological abuse, Plaintiff was harassed, badgered, and broken down online and within the absolute privacy of her home through the repeated use of derogatory terms and slurs, including the word "faggot," which was hurled at her and referenced in a manner that proved Defendants were actively monitoring and conducting illegal electronic surveillance inside her private residence.
13. Capitalizing on this coordinated harassment, Defendant **Andy Cohen** publicly broadcasted false and defamatory statements asserting that Plaintiff had been

"fired" from a job she never held in the first place, severely damaging her professional reputation and fabricating a false narrative of employment termination.

14. In an attempt to cover his tracks, deflect liability, and obfuscate the origin of these false broadcasts and surveillance operations, Defendant Cohen and associated network participants began incorporating **Arkeisha Antoinette Knight**—who is independently being sued in her own separate legal action for her direct role in this conspiracy—into the operational framework and public narrative rollout.

15. This unauthorized use, public dissemination, secret recording, simulated execution, distribution of severe falsehoods, and campaign of terror and intimidation directly caused intense stalking, severe emotional distress, and significant workplace harassment.

16. The resulting harassment, loss of employment, reputational destruction, and economic devastation became so severe that Plaintiff was forced to retire early in 2025 and ultimately caused Plaintiff to experience homelessness.

17. When Plaintiff attempted to contact the Defendants regarding these issues and issued her notices, the situation escalated; Defendants and network figures began indirectly responding to Plaintiff's emails and Instagram posts concerning the situation, mocking her claims and asserting that she would not be able to prove what they were doing to her and her children.

18. In an ongoing effort to suppress evidence and obstruct Plaintiff from retaining proof of their wrongful acts, various parties began systematically taking content directly from Plaintiff's Instagram page and subsequently reporting the page to

get it penalized or removed. However, the vital evidentiary videos and records remain safely captured and preserved on Plaintiff's Snapchat account.

19. Defendants distributed or aired private footage and life details of Plaintiff on television shows, movies, and other media, including Curtis "50 Cent" Jackson / G-Unit Studios and STARZ broadcasts such as *BMF*, Emmitt Perry Jr.'s films and series (*Diary of a Mad Black Woman*, *Madea's Family Reunion*, *Why Did I Get Married?*, *Madea Goes to Jail*, *Why Did I Get Married Too?*, *Good Deeds*, and all seasons of *Beauty in Black* featuring multiple split roles derived from Plaintiff's life), Andy Cohen's scripted reality series and the *Real Housewives* franchises on Bravo (including Potomac, Beverly Hills, Atlanta, and New York City), and *My Life*.
20. Plaintiff believes that individuals encouraged or directed others to engage in similar conduct, including following Plaintiff or sharing private content.
21. Plaintiff alleges that Defendants may have benefitted commercially or otherwise from this conduct.
22. Plaintiff alleges that Defendants acted knowingly or recklessly in a manner that caused Plaintiff harm.

**4. Causes of Action**

1. **Invasion of Privacy: Public Disclosure of Private Facts** – Defendants disclosed intimate, private facts about Plaintiff's life—including childhood sexual assault trauma, family dynamics, childbirth details, rape trauma, private home sexual activity (including online distribution by Kenya Moore), private personal artifacts and apparel displays (such as Kim Zolciak-Biermann publicizing the 2007 wig

worn when meeting Brandon Wright), and ectopic pregnancy medical episodes without consent, causing severe emotional distress.

2. **Invasion of Privacy: Appropriation of Likeness** – Defendants used Plaintiff's image, likeness, personal relationships (including Terrance L. Shorter, Brandon Wright, Jamil Fells, and all former lovers who are each separately being sued in their own individual cases), and life narrative—including personal nicknames ("Candy" from her late grandfather), false marriage fabrications, private travel to Mexico, secret recordings, personal routines, and the multiplication of her persona across **multiple simultaneous roles and characters across all seasons of *Beauty in Black***—for commercial and entertainment purposes without authorization.

3. **Invasion of Privacy: False Light** – Defendants placed Plaintiff in a highly offensive and false public light by twisting her real-life details, broadcasting false narratives regarding marriage status, medical condition, drug involvement, and fabricated job terminations (by Andy Cohen), tracking her movements, and falsely depicting her death in media broadcasts, misleading the public.

4. **Intentional Infliction of Emotional Distress (IIED)** – Defendants' extreme and outrageous conduct—including secret recordings, exposing childhood sexual trauma and assault, tracking her to Mexico, exploiting false relationship narratives while shielding abusers like Eric Spooney (*Why Did I Get Married Too?*), online publication of private home sexual acts by Kenya Moore, public exposure of personal items and historical relationship artifacts by Kim Zolciak-Biermann (concerning Brandon Wright), unauthorized cinematic exposure of relationships

with individuals like Jamil Fells (*Good Deeds*), multi-character identity fragmentation across all seasons of *Beauty in Black*, in-home verbal abuse and targeted slurs monitoring private spaces, Andy Cohen's false termination broadcasts and integration of Arkeisha Antoinette Knight to cover tracks, exploiting former romantic histories where all former lovers are independently being sued in their respective cases, mocking her after direct pleas, intentionally worsening harassment after being asked to stop, spreading malicious health and drug rumors, coordinating voodoo intimidation tactics, making threats of death before trial, reporting her social media pages to suppress evidence, and simulating Plaintiff's death on television—directly caused severe emotional trauma.

5. **Negligent Infliction of Emotional Distress (NIED)** – Defendants acted with reckless disregard for Plaintiff's mental health, safety, and well-being, creating a foreseeable wave of terror, public confusion, and psychological damage.
6. **Tortious Interference with Employment / Economic Advantage** – Defendants' actions and the resulting public harassment interfered with Plaintiff's professional life, ultimately forcing her early retirement, loss of income, and displacement into homelessness.
7. **Civil Conspiracy** – Defendants and associated parties (including Eric Spooney, Brandon Wright, Jamil Fells, Arkeisha Antoinette Knight, Kenya Moore, Kim Zolciak-Biermann, and all other former lovers acting individually in their respective separate lawsuits) acted in concert to unlawfully record, distribute, monetize, and sensationalize private aspects of Plaintiff's life while encouraging

ongoing harassment, stalking, intimidation, cover-up tactics, and evidence suppression.

8. **Defamation / Defamation Per Se** – Defendants made false, highly damaging representations and narratives—including Andy Cohen's false public assertions that Plaintiff was fired from a nonexistent job, false imputations of communicable disease, illicit drug involvement, false marital histories, and simulated death scenarios—to third parties and through media broadcasts, severely damaging her personal and professional reputation.
9. **Breach of Confidence / Confidentiality** – Defendants breached established duties of confidentiality by publicly exploiting, broadcasting, and profiting from intimate, private disclosures and medical records entrusted or intercepted under strict expectations of privacy.
10. **Fraud / Intentional Misrepresentation** – Defendants, including Eric Spooney and production entities, knowingly fabricated, commercialized, and sold false relationship and marriage narratives while concealing domestic violence realities to deceive media consumers and financial backers for profit.
11. **Violations of Electronic Communications Privacy Act (ECPA) / Wiretapping Acts** – Defendants engaged in the unauthorized secret interception, recording, storage, monitoring, and retransmission of Plaintiff's private communications, telephone calls, home activities, and intimate video content without consent, evidenced by the direct utilization of private in-home statements and targeted slurs.
12. **Copyright Infringement** – Defendants systematically scraped, downloaded, and misappropriated original digital video content directly from Plaintiff's social

media platforms without permission, coupled with coordinated mass-reporting to suppress Plaintiff's evidentiary proofs.

13. **Abuse of Process** – Defendants and associated actors improperly utilized reporting mechanisms, platform takedown procedures, and institutional frameworks to harass Plaintiff and suppress her ability to gather and present evidence.
14. **Vicarious Liability / Respondeat Superior** – Corporate and studio defendants (including Tyler Perry Studios, G-Unit Studios, and Bravo Media) are held directly liable for the unlawful tortious acts, harassment, and privacy violations committed by their producers, agents, and cast members acting within the scope of their employment and production duties.

**5. Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that the Court:

1. **Award Structured Damages in a total amount not less than $666,000,000, categorized specifically as follows:**
   - **a. Special & Economic Damages:** Compensating fully for calculated lost wages from forced 2025 early retirement, specific housing/relocation costs resulting from displacement and homelessness, and the commercial market value of misappropriated likeness, multi-character allocations (*Beauty in Black*), and identity.
   - **b. General & Compensatory Damages:** Compensating for severe physical manifestations of emotional distress, trauma from home surveillance and

slurs, psychological injury, humiliation, and severe reputational destruction.

- **c. Punitive & Exemplary Damages:** Designed specifically to punish, penalize, and deter willful, malicious, and coordinated corporate harassment, surveillance operations, and cover-up schemes.

2. Order the complete disgorgement and forfeiture of all profits, revenue, streaming proceeds, and commercial gains obtained by Defendants as a direct result of their unauthorized exploitation of Plaintiff's life narrative, multi-role character allocations (*Beauty in Black*), and likeness;
3. Issue a declaratory judgment finding and declaring that Defendants' long-term campaign of unauthorized surveillance, public disclosure of private facts, false light publication, and defamation violated Plaintiff's legal rights;
4. Grant a permanent injunction enjoining and restraining Defendants, their agents, employees, and successors from any further unauthorized use, production, broadcasting, or exploitation of Plaintiff's private life, likeness, or personal narrative;
5. Order Defendants to issue a public retraction, correction, and clarification across their respective broadcast networks, streaming platforms, and social media channels regarding the false statements, medical rumors, false job termination claims by Andy Cohen, and false death depictions concerning Plaintiff;
6. **Order the Appointment of an Independent, Court-Appointed Neutral Technical Custodian / Expert:** Tasked with overseeing the immediate extraction, secure preservation, and sequestration of all infringing digital assets, master reels,

server files, production notes, and script drafts across Bravo, STARZ, and Tyler Perry Studios to prevent evidence tampering, destruction, or quiet deletion during the pendency of this litigation;

7. Order the removal, secure sequestration, or destruction of all digital copies, master recordings, and broadcasts containing the unauthorized misappropriations and defamatory depictions of Plaintiff, alongside internal data-purging protocols;
8. **Order the physical and digital screening and presentation of all seasons and episodes of *Beauty in Black* directly in open court as primary, tangible trial evidence, demonstrating precisely how Plaintiff's life story, personal experiences, physical traits, and identity have been divided, duplicated, and displayed across multiple unauthorized roles;**
9. **Order a Court-appointed comprehensive forensic audit of production archives, writer rooms, casting notes, and digital communications of Tyler Perry Studios, G-Unit Studios, and Bravo Media to trace the exact origin points of stolen narrative elements and multi-role script assignments;**
10. **Order specific financial compensation and designated federal housing restitution to fully remediate, reverse, and compensate for the homelessness, displacement, and forced early retirement directly caused by the continuous harassment and coordinated interference;**
11. Order the appearance of all named Defendants, network representatives, production participants, cast members, writers, and associated parties (including Arkeisha Antoinette Knight) for depositions and court proceedings to testify

under oath regarding their production methods, specific roles, multi-character script distributions, cover-up tactics, and the exact origins of any storylines, artifacts, or events derived from Plaintiff's private life;

12. Reserve and acknowledge Plaintiff's absolute right to seek extraordinary federal review, emergency writs, and ultimate constitutional adjudication before the **Supreme Court of the United States** regarding any infringement of fundamental federal civil rights, privacy guarantees, and anti-surveillance statutes;
13. Grant pre-judgment and post-judgment interest at the maximum legal rate;
14. Award attorney's fees, filing costs, and expenses; and
15. Grant any other legal or equitable relief the Court deems just and proper.

**Respectfully submitted,**

/s/ Europe R. Colbert

**EUROPE R. COLBERT**

12794 Couwlier Ave

Warren, MI 48089

europecolbert9@gmail.com

September 21, 2026